T. A. Johnson, J.
Upon the undisputed facts in this case established upon the trial, is the plaintiff entitled to recover % And if so, to what amount % He was employed by Perrine & Hill, who were contractors, to haul stone to be used in the construction of the road, with two four-horse teams and another driver, at $5 per day for each team and driver. One of the teams the plaintiff drove himself, and as he was working by the day for the contractors, he must, I think, be regarded as *334 a laborer performing labor in constructing the defendants’ road within the meaning of the statute.
Certainly he was not a contractor for the construction of any part of the railroad, and must fall within the other class of persons mentioned in the statute, and come under the designation of a laborer. In his notice to the defendants, he claimed only the amount due for his own labor and that of his teams, claiming nothing for the labor of his hired man who drove one of the teams.
The act under which this action is brought (Sess. Laws of 1850, ch. 140, § 12), provides that “as often as any contractor for the construction of any part of a railroad, which is in progress of constrnction, shall be indebted to any laborer for thirty or any less number of days’ labor performed in constructing said road, such laborer may give notice of such indebtedness to said company, in the manner herein provided, and the said company shall thereupon become liable to pay such laborer the amount so due him for such labor.”
Is this indebtedness for which the company may be made liable, to be confined to that only accruing from labor performed by the laborer personally, or is it to be extended to indebtedness for labor performed by other persons in the employ of such laborer, and to whose earnings he is entitled %
The design, of the act was, it seems to me, to give the laborer a claim upon the company for the amount due him from his employers for thirty days’ labor performed by himself, or any number of days less than thirty. Mothing beyond this can fairly be inferred from the terms employed. The indebtedness must be to a laborer, and for any number not exceeding thirty days’ labor, performed in constructing the road. And the liability of the company when fixed is limited to the amount so due such laborer for such labor. The whole object manifestly was to protect a class of day laborers upon works of this description, who depended mainly upon their own labor, and payments at short intervals, for a *335 subsistence, against the failures and frauds of contractors by whom they were employed; and not those who might for convenience or profit employ, the labor of others. The act being in plain derogation of the rule of the common law, and calculated .to impose the burden upon this class of corporations of paying twice for the same labor, ought not to be extended by construction to claims not falling clearly within its terms.' This will restrict the liability of the corporation to the indebtedness to the laborer for his personal services with implements used by him for which no extra charge is ordinarily made. This is substantially the construction given by. the court below, except that that court allowed the plaintiff to recover for the labor of the team driven by himself.
Upon what principle is it that the plaintiff is allowed to recover for the services of his team and not those of his hired servant, and for the earnings of the team driven by himself and not of that driven by the servant ? It is obvious that the labor performed by the teams is no more the labor of the plaintiff personally than that performed by the servant. It was his in the same sense and no other that it would have been had it been performed wholly by men in his employ.
The same principle which would allow the plaintiff compensation as against the company for the labor performed by his animals, would undoubtedly extend to mechanical forces employed by the owner of a machine, and render them liable for the hire of a steam excavator, performing perhaps the labor of an hundred laborers, when used by the owner, or his agent, in the service of contractors. It is plain that the statute was not intended to cover an indebtedness for services thus rendered, and it should be confined strictly to claims for personal labor rendered by the claimant himself.
Consequently, there can be no recovery in this action for the labor performed by the plaintiff’s teams, nor for that of his hired servant.
But the more important question, which goes to the *336 whole cause of action, is, whether the plaintiff, upon the facts of this case, is entitled to recover against the defendants the value of his personal labor for the, contractors in constructing the road. Can he split up his demand against the contractors, and recover a portion of it in this action against the defendants ? I am not aware of any legal rule upon which this can be done.
He was not employed separately by the contractors. The contract was entire, for two teams and two hands at $5 per day for each team and driver, or $10 per day for the whole force furnished.
The indebtedness was for the entire service in mass, accruing from the performance of the undei taking. If a recovery is to be had therefore for the labor of the plaintiff, it cannot be according to the contract, for that furnishes no means of apportioning the value of his services. It must proceed upon a quantum meruit, which w'ould be a new obligation created by the statute, or imposed by the court. This was the rule adopted by the court below, and under it the, plaintiff recovered $5.50 per day for the services of himself and one team, which was at a rate different from the agreement under which the services were performed.
The statute makes the, company liable, when the proper steps have been taken to charge them, for the indebtedness, and not the value of the services rendered. They are liable, if at all, in virtue of the contract, and according to its terms ; and the claim can never exceed the compensation agreed upon. If no recovery can be had according to the contract, there can be none at all.
From the nature of the undertaking, it is impossible for a court or jury to determine the amount of the indebtedness from the contractors to the plaintiff for his personal services. But if the amount was capable of being accurately ascertained and distinguished, it could not, I think, be recovered as a distinct and separate indebtedness ; and if it could, it would inevitably, upon well settled principles, extinguish the residue of the demand.
But a shorter, and, I think, more decisive answer to *337 the whole, is, that here was no indebtedness from the contractors to the plaintff for his labor as such, and the claim does not fall within the statute. The indebtedness, as a demand — a legal entity—was not for his labor ; it was for labor of hands and teams furnished by him, of which his own formed part, but no distinguishable or several part. The debt was for the mass of labor performed, and not for that performed by the plaintiff personally. It was not, therefore, a claim which the plaintiff could charge over to the defendants, and compel them to pay. Had the plaintiff bargained with the contractors for his own labor by the day, separately, he might to that extent perhaps have made the defendant liable for the amount agreed upon. But as he did not take that precaution, but chose rather by his agreement to mingle and confuse it in the general mass, he has, I think, deprived himself of the remedy provided by the statute. The courts, certainly, have no power to modify the contract, or to make a new one for the parties, and thus change the character of the debt from what they have made it by their agreement.
The judgment of the supreme court must therefore be reversed.
Comstock, J.
Railroad companies, by the general law under which they are organized, are made liable to any “laborer” on their construction, as often as the contractor by whom he is employed is indebted to him for thirty or any less number of days of “labor,” on a certain notice being given within a time specified {Laws of 1850, 211, § 12).
In a large sense, the term “laborer” may include a very extensive class of persons, but this statute was intended for the protection of laborers in the strict and primary sense, employed by contractors upon railroads, supposed to be poor, dependent on their wages, and therefore proper objects of legislation of this character.
The supreme court held in this case, and I think properly, that a person employing another to labor with *338 himself for a railroad contractor, could not, under this statute, recover from the company the wages of the person so employed. He may, I presume, include in his action the wages of any one to whose services the law entitles him, as for example his minor son. But if beyond this we hold railroad corporations liable to one individual for the services of himself and another, the principle will not stop there. It must be extended so as to include the wages of any number of individuals. Indeed, upon this construction it would not be necessary for the person claiming to recover the wages of others to have been himself a laborer at all. If he can recover for labor performed by another, or by others whom he employs, it must be on the ground that the contractor is indebted to him for such labor, although he actually performs no part of it himself. A further consequence of such a construction would be that the corporation might each day become liable to one man for thirty days’ labor if he employed so many men and gave daily notice to the company ; and during the twenty days within which notice must be given, a liability for six hundred days’ work might arise.
The statute, we think, gives the remedy only to the person who labors himself lor a contractor, and confines it to the price of his own labor, or of that to which the law entitles him.
In the present case, the plaintiff bargained with the contractors to labor with two four-horse teams, driving one himself and employing a man to drive the other. The price was specially agreed on at $5 per day for each team and driver. It was proved on the trial that each team without a driver was worth $3.50, and that the plaintiff’s own .services were worth $2 per day, making $5.50 for the wages of the plaintiff and the team he drove. In his notice to the company, the plaintiff claimed $8.50 per day for the labor of himself and the two teams, thus dividing the contract price, leaving the wages of the other teamster at $1.50 per day, and rejecting them from his claim. The supreme court upon the *339 special verdict which estimated the services of the two men separately, and then of the two teams together, made a further division of the contract, and allowed to the plaintiff the quantum meruit value of his own labor and that of the team which he drove, being as proved $5.50 per day for thirty days. In this we think there was error.
The plaintiff clearly did not belong to the class of laborers which the legislature intended to protect, yet, within the letter of the statute, as a laborer he might recover for his own wages if they had been a matter of separate contract. But the statute, without some looseness of interpretation, cannot be made to embrace a four-horse team. If it can, I cannot see any principle upon which the labor of the other team was not also allowed. That it was driven by another man in the plaintiff’s employ can make no difference. Both teams alike belonged to the plaintiff, and both worked under one contract. The principle cannot be confined to one, or even two, or any number of teams. If a “ day’s labor” of a “laborer” includes also the team which he drives, it must include any number of them working under the same agreement.
Nor indeed would it be necessary for the owner to labor at all. In a large sense the person whose teams are employed for another performs labor with them whether he works himself or not, but in a stricter sense, and we think within the meaning of this statute, a day’s labor of a man is that which he performs himself. This may include any mere implement of toil without which labor cannot be performed, but not the use of horse any more than of steam power.
Another difficulty in the judgment as it stands, is, that it makes a new agreement between the plaintiff and the railroad contractor. The foundation of the liability of the corporation is the debt due to the laborer from the contractor.
In this case the contract was entire for the labor of the plaintiff, his man and two teams. The debt is also *340 entire, and arises ont of the performance of that contract. How it appears to me the defendants cannot be made liable for a part of the services, when confessedly they are not for another part, the whole being performed under one entire agreement. The true obligation of the contractor was to pay for the whole as a unit, and I do not see how this can be split into two parts for the purpose of enforcing one of them against the company. The recovery against the corporation must be according to the agreement of the contractor and his obligation arising under it to the laborer. If the laborer has so dealt with the contractor that any portion of an entire demand is not within the statute, then his remedy is against his employer alone upon his contract.
In yet one other aspect the error is still more palpable. The price of the labor of the two men and teams was specified and agreed on at $5 each per day. The contract, therefore, does not admit of a quantum meruit valuation of the services of the plaintiff alone and one of the teams. But the special verdict finds what the services of the plaintiff and one of his teams were worth, without respect to the contract, and the supreme court rendered judgment accordingly. As the contractor was not liable upon any such basis, so the defendants cannot be.
The judgment should be reversed, and a new trial granted.
The judgment was modified and given for sixty dollars, the labor of the plaintiff only, on the ground that no objection to this was made.